UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
UNITED STATES OF AMERICA,            :
                                      :
               Plaintiff,            :      14 Civ. 8593 (JGK)
                                      :
          -against-                  :
                                      :
NARCO FREEDOM, INC.,                  :
                                      :
               Defendant.            :
-------------------------------------------------------------x

## Report of Temporary Receiver
(May 1, 2015 through May 31, 2015)

Lori Lapin Jones, Temporary Receiver, respectfully submits this report for the period May 1, 2015 through May 31, 2015 pursuant to the Order dated May 14, 2015.

### Introduction

As previously reported to the Court, the critical focus of the Temporary Receiver is the exploration of options for Narco Freedom, Inc. ("Narco") that will enable it to emerge from receivership. That process has been undertaken by the Temporary Receiver on an expedited basis and the steps necessary to assess Narco's options already have been put into place by the Temporary Receiver. Notwithstanding the swift pace at which the Temporary Receiver is proceeding, she has significant concerns as to whether there will be sufficient funds to continue to operate Narco to the point where the Temporary Receiver is in a position to propose, and then implement, a comprehensive plan for Narco. The government agencies working with the Temporary Receiver have been made aware of this prospect.

## Work Performed by the Temporary Receiver

The Temporary Receiver continues to work diligently to carry out her duties. During the period from May 1, 2015 through May 31, 2015 ("Reporting Period"), the Temporary Receiver billed over 100 hours. Aspects of the Temporary Receiver's work during the Reporting Period included, inter alia,: (a) addressing day-to-day operations at Narco; (b) focusing on finances, including reducing expenses and increasing revenue; (c) monitoring and ensuring compliance with the Preliminary Injunction Order; (d) addressing litigations; (e) regularly communicating with federal, state and city government agencies; and (g) taking steps in furtherance of an exit strategy for Narco.

### *General Administration*

Set forth below is a description of certain of the day-to-day matters addressed by the Temporary Receiver during the Reporting Period.

a. Insurance. The Temporary Receiver spent significant time working with Narco's insurance broker on the renewal/replacement of insurance policies which were expiring on or about June 1, 2015. Narco's insurance carrier declined to renew Narco's director/officer insurance policy and many other carriers would not issue such a policy to Narco. Ultimately, the Temporary Receiver obtained a new policy which carries a higher premium and less favorable coverage than the policy that expired. The carrier for Narco's commercial package policy (i.e., property, casualty, malpractice, umbrella) had issued a conditional renewal and efforts to seek an adequate replacement policy with other carriers were not successful. The existing carrier renewed at a premium increase of approximately 50% (a total cost of approximately $900,000). As part of efforts to obtain insurance, the Temporary Receiver was required to provide insurance carriers with information concerning the status of the receivership, the indictments and

current management. The higher premiums have added to the cash strains on Narco.

b. <u>Landlords/Leases</u>. Landlords continue to reach out to the Temporary Receiver on day-to-day issues (insurance verification, inspections, repairs) and to determine the future status of their leases. The Temporary Receiver has provided information to landlords and access to premises. The Temporary Receiver has also continued communications with the landlord of the Bridge Plaza clinic concerning the landlord's strong interest in having Narco vacate those premises and the Temporary Receiver is hopeful that the parties can continue to work on a resolution without litigation. Finally, the Temporary Receiver is attempting to extricate itself from a lease for premises which were apparently being used by businesses of former employees or principals of Narco. This lease has an annual cost to Narco of more than $84,000.

c. <u>Communications with Government Agencies</u>. The Temporary Receiver has continued regular communications with representatives from: the United States Attorney's Office; the New York State Attorney General's Office; New York State's Office of Alcohol and Substance Abuse Services ("OASAS"); the New York City Human Resources Administration ("HRA"); and the New York State Department of Health. The Temporary Receiver has also communicated with the New York State Office of Mental Health ("OMH") concerning a Narco clinic that OMH licenses. Communications with government agencies have included status updates on Narco's operations and finances, the status of the Temporary Receiver's request for the release of Medicaid funds that were withheld prior to the appointment of the Temporary Receiver, interests by certain agencies as to specific programs or houses, and potential exit strategies for Narco. In addition, the Temporary Receiver has provided OASAS with financial information for review by OASAS' auditors, has responded to OASAS' specific inquiries concerning Narco's finances and is continuing the flow of financial information to OASAS.

d. <u>Criminal Indictment/New York State Civil Actions</u>. At the request of the Temporary Receiver, the hearing on the criminal indictment against Narco was adjourned from May 2015 to June 17, 2015 and the Temporary Receiver has informed New York State that it will seek further adjournments. In addition, at the time of the Temporary Receiver's appointment, two civil lawsuits by New York State were pending in New York State Supreme Court (Bronx County). One of those lawsuits seeks forfeiture and related relief and has been stayed pending the outcome of the criminal proceeding. The second lawsuit has been partially withdrawn (as it relates to the request for a temporary receiver under New York State law) and the balance of that lawsuit (seeking removal of Narco Freedom executives and restitution) does not appear to be moving forward at this time. The Temporary Receiver's counsel has been in communications with the New York State Attorney General's Office concerning these actions.

e. <u>Litigations</u>. During the Reporting Period, the Temporary Receiver began assessing existing litigations against Narco (e.g., status, deadlines, whether a firm was representing Narco, whether defense and potential liability are covered by insurance). Since her appointment, the Temporary Receiver was also served with two new lawsuits (relating to the pre-Receiver period). The Temporary Receiver has entered into one tolling agreement and obtained extensions of time to respond to the two lawsuits. The temporary injunction provided for in the Amended Order Appointing Receiver has facilitated the Temporary Receiver's work as it provides the necessary breathing spell during this critical period for Narco. In addition, a hearing has been scheduled to begin September 10, 2015 before an Administrative Law Judge concerning a pre-Receiver Medicaid audit matter.

f. <u>Day-to Day Matters</u>. The Temporary Receiver is continuing to address a variety of issues on a day-to-day basis relating to Narco's operations and finances. The Temporary Receiver is in

regular communications with the Acting Chief Executive Officer, Acting Chief Financial Officer and other employees. Employees are understandably concerned about the impact of the Temporary Receivership and the future of Narco. Notwithstanding this difficult time for Narco's employees, there is nothing the Temporary Receiver has learned to date that suggests that the quality of services has declined and it appears that the employees largely remain committed to their jobs and Narco's mission.

*Freedom Houses*

As indicated in the last status report, the Temporary Receiver previously toured the Freedom Houses in the Bronx and New York City. During the current Reporting Period, the Temporary Receiver toured the Freedom Houses in Brooklyn. She assessed them for compliance with the Preliminary Injunction Order (discussed below) and spoke with staff at each house on issues concerning, inter alia, the Preliminary Injunction Order, security/safety, mail protocols, and incidents with residents. During the Reporting Period, the Temporary Receiver was notified of incidents at the Freedom Houses that required direction from the Temporary Receiver. The Temporary Receiver reviewed all such incidents and provided necessary guidance to staff, usually following discussion with and advice from her counsel. The Temporary Receiver also followed up on complaints, although in certain instances the complaints were general or anonymous, making them more difficult to specifically verify or address.

A tenants' rights group has been in communication with the Temporary Receiver seeking to address issues at the Freedom Houses and revise current protocols. The Temporary Receiver has sought advice from her counsel on these issues and will continue to attempt to address issues without litigation, if possible.

*Compliance with the Preliminary Injunction Order*

The Temporary Receiver previously reported on the steps she took to comply with the Preliminary Injunction Order. She has continued those efforts. During her visits to the Freedom Houses during the Reporting Period, the Temporary Receiver observed that the notices required to be posted by the Preliminary Injunction Order were, in fact, posted, was shown the verification logs reflecting receipt by residents of the notice, and confirmed the notices are part of the intake packets. The Temporary Receiver also continued communications with Narco's Director of Housing and staff at the Freedom Houses concerning compliance. In addition, the Temporary Receiver's counsel is in regular contact with the Acting Chief Executive Officer concerning compliance with the Preliminary Injunction Order.

The notices contain a telephone number of an Assistant United States Attorney ("AUSA") to report violations of the Preliminary Injunction Order. The AUSA follows up with the Temporary Receiver (or her counsel) on calls received. One recent call suggested a possible violation of the Preliminary Injunction Order relating to an anticipated discharge. Although the complaint lacked specificity, the Temporary Receiver directed the Acting Chief Executive Officer to follow up. Narco subsequently reported that it did not believe that any discharges occurred related to the complaint. In addition, the Temporary Receiver also directed that a letter be transmitted to Freedom House staff reiterating the prohibition of the Preliminary Injunction Order against evicting or removing individuals who fail or refuse to enroll in or attend a Narco (or Narco affiliated) outpatient program.

*Finances*

As previously reported, there was a backlog in the work of the finance department at the time of the Temporary Receiver's appointment. Certain of that work now has been completed:

bank reconciliations are current; grant vouchers are current (payment pending); and posting of cash receipts to the general ledger is current. Other work is in process.

The cash cushion Narco has lived off of is rapidly eroding through its monthly operating losses and through significant required expenditures (e.g., renewal of insurance; costs of mandatory electronic medical records conversion). The Temporary Receiver has closely monitored and reduced expenses through the elimination of luxury vehicle leases, elimination of expensive supplemental excess health coverage (a second health insurance policy for former executives), a freeze on raises (with very limited exceptions), capping hours of per diem workers (unless specific request is made and justified), curtailed employee overtime, a lease reduction at one premises and potential future lease reductions. In addition, through the Reporting Period, the Temporary Receiver remained the sole signatory on Narco's bank accounts, and reviewed invoices and questioned certain items that had been regularly paid by Narco.[1] This scrutiny has led to a reduction in certain expenses.

Revenue has declined for certain programs and certain grant funds have been designated as high risk. The Temporary Receiver has pursued and is continuing to pursue miscellaneous sources of revenue such as unused retainers, insurance reimbursement for professional fees and outstanding receivables. The Temporary Receiver is also working with HRA to collect housing arrears. Finally, the Temporary Receiver is engaging a consultant (at a cost of $5,000) to evaluate the collection of outstanding Medicaid and other receivables and obtain potential revenue enhancements.

---

[1] Effective June 5, 2015, the Temporary Receiver has authorized one individual to be an authorized signer on Narco's bank accounts. That individual is a Certified Public Accountant that was hired by the Temporary Receiver at the outset of her appointment. She has no prior connections with Narco and has substantial experience working for distressed health care entities.

The Temporary Receiver has continued to pursue the release of the $2.9 million in Medicaid funds withheld by New York State (addressed in the Temporary Receiver's first report). During the Reporting Period, the Temporary Receiver has had detailed communications with the New York State Department of Health and with the Governor's Office concerning the need for these funds. The Temporary Receiver has responded to all inquiries from New York State to obtain the release of funds including communicating with, and providing financial information to, auditors from OASAS. At this juncture, New York State has not agreed to release those funds, but indicated it may in the future.

The Temporary Receiver has determined that Narco should not continue the retention of the accounting firm that had been Narco's independent auditors for many years and that a new firm should be retained. The Temporary Receiver solicited interest and proposals from other firms, selected a new firm, and sought Court approval for their retention. The independent auditors will prepare the 2014 audited financial statements, prepare the 2014 tax returns and certify the New York State Medicaid Cost Report.

*Exit Strategy*

As previously reported, the Temporary Receiver met with seven not-for-profit health care and/or housing providers to discuss potential options for Narco. In addition, counsel for the Temporary Receiver had telephonic communications with other parties interested in assisting Narco. Two of the parties that the Temporary Receiver met with were hospitals that were interested exclusively in assisting Narco with its methadone population, but did not have an interest or expertise in Narco's housing component. Five of the parties the Temporary Receiver met with had an interest in assisting Narco with both its clinical programs and housing operations. From that group of providers, the Temporary Receiver solicited proposals.

The Temporary Receiver and her counsel reviewed proposals and followed up with certain providers to address their proposals. Following that process, the Temporary Receiver selected Samaritan Village to assist her in assessing Narco's entire operations and proposing a plan to address housing, clinics/programs, employees and operations. The Temporary Receiver has requested that Samaritan Village complete its assessment and propose a plan within 30 days (i.e., by the end of June). The extent of that evaluation process is more fully set forth in the proposal of Samaritan Village filed with this Court [ECF No. 167].

Following the selection of Samaritan Village, the Temporary Receiver conducted a meeting with Samaritan Village, the New York City Mayor's Office, HRA, OASAS and the United States Attorney's Office to address timing, funding, goals, strategies and specific interests of the various agencies. The cost of Samaritan Village's evaluation will be paid by OASAS ($110,000) and Narco ($45,000). This Court has approved payment by Narco of its share [ECF No. 168].

Samaritan Village has moved swiftly. It has executed a non-disclosure agreement and HIPAA Business Associate Agreement. The Temporary Receiver promptly conducted a meeting with Samaritan Village and Narco's executive team. Thereafter, Samaritan Village met with Narco's program directors. The Temporary Receiver also provided financial information to Samaritan Village and met to review finances. Samaritan Village has also met or otherwise communicated with various government agencies. Following the close of the Reporting Period and beginning the week of June 1, 2015, Samaritan began touring the Freedom Houses and performing assessments of Narco's clients.

Samaritan Village and the interested government agencies are fully aware of Narco's deteriorating cash situation and the need for a prompt plan and funding to implement any

approved plan.

## Conclusion

The Temporary Receiver remains committed to seeing Narco through this challenging time. She will continue to focus on the development of an exit strategy for Narco in consultation with Samaritan Village and interested government agencies and she will continue her work on an expedited basis. The Temporary Receiver does not know whether there will be sufficient cash to allow this process to unfold. The Temporary Receiver will report to the Court on any further significant developments at the June 16, 2015 status hearing.

Dated: Great Neck, New York
June 5, 2015

Respectfully submitted,

/s/ Lori Lapin Jones, Temporary Receiver
Lori Lapin Jones, Temporary Receiver

98 Cutter Mill Road – Suite 201 North
Great Neck, New York 11021
Telephone: (516) 466-4110