UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                    Plaintiff,              14-cv-8593 (JGK)

          - against -                       MEMORANDUM OPINION AND
                                            ORDER
NARCO FREEDOM, INC.,

                    Defendant.

JOHN G. KOELTL, District Judge:

     On November 23, 2015, the Temporary Receiver for Narco
Freedom moved for authority to file a petition for bankruptcy
under Title 11 of the United States Code. Dkt. No. 350. The
Court heard argument from interested parties on December 7,
2015. On December 9, 2015, the Temporary Receiver filed a
proposed order granting the motion for authority to file a
petition for Narco Freedom. Dkt. No. 371. Several interested
parties filed oppositions to the motion on December 14, 2015.
Dkt. Nos. 376, 377, 378, 379, 380, and 381. For the reasons
explained below, the Temporary Receiver's motion is granted.

     At the time of the Temporary Receiver's motion,
applications by Alan Brand, Jason Brand, Jonathan Brand, and
Gerald Bethea ("Former Executives") for payment of accrued
vacation and personal time were pending.  Former employees of
Narco Freedom, represented by the Fuchsberg law firm ("Former
Employees"), also had a pending application which requested

1

payment of all accrued vacation pay and severance. The Temporary Receiver had previously paid the former employees eight weeks of vacation pay and held eight weeks of vacation pay in a reserve fund for the Former Executives. The landlords of properties previously occupied by Narco Freedom, including properties that were transitioned to a substitute provider, Samaritan Village ("Landlords"), filed an application requesting that the Temporary Receiver be ordered to pay the Landlords for building code violations and repairs to the buildings. For the reasons explained below, those applications are denied without prejudice.

## A.

The Former Executives and the Landlords oppose the motion for authority to file a bankruptcy petition for several reasons:(1) the Temporary Receiver has not provided financial statements to determine whether Narco Freedom's liabilities exceed its assets; (2) the bankruptcy proceedings will delay payments to the Former Executives and the Landlords; (3) there is no "legal basis" for a receiver being authorized to file a bankruptcy petition.

The Court concludes that the Temporary Receiver's motion is well founded. Based on the numerous claims asserted against Narco Freedom, it is evident that Narco Freedom's potential

liabilities exceed Narco Freedom's assets. An administrative hearing is pending on a $1.3 million-dollar claim brought by the Office of the Medicaid Inspector General against Narco Freedom. Dkt. No. 363. The Government has asserted that it has a substantial claim under the False Claims Act, and it has even asserted that all of Narco Freedom's funds should be restrained under 18 U.S.C. § 1345(a)(2) as proceeds of a Medicaid fraud. Dkt. No. 345. In addition to these claims, the Former Executives seek payment of vacation pay in various amounts[1], and there is an application by the Fuchsberg firm for additional compensation for the Former Employees in the amount of $754,741.42. Dkt. No. 336. Finally, the Landlords claim that Narco Freedom owes them about $890,780 for past building code violations and for restoration costs. Dkt. No. 337. The proper way to resolve all these claims is in bankruptcy where assets and liabilities can be determined.

To the extent the Former Executives criticize the Temporary Receiver for not being more forthcoming about Narco Freedom's assets, the Temporary Receiver will have to file a schedule of assets and liabilities in the bankruptcy court. The interested parties may file objections to the bankruptcy petition and claim

---

[1] Alan Brand claims he is owed $567,999.81. Dkt. No. 318. Jonathan Brand claims he is owed $64,173.65. Dkt. No. 308. Jason Brand claims he is owed $178,166.85. Dkt. No. 133. Gerald Bethea claims he is owed $92,829.64. Dkt. No. 275.

that there is no basis for the bankruptcy filing. And as to liabilities, it is plain that there are substantial liabilities, and questions as to the amount of liabilities, their recoverability, and their priority can best be resolved in bankruptcy.

Moreover, contrary to the Former Executives' argument that there is no legal precedent for transitioning a receivership to a bankruptcy case, there are several instances where a district court that had previously appointed a receiver expanded the authority of the receiver to include the power to file for Title 11 protection and initiate a bankruptcy case. Expanding the power of a receiver in this context is by no means novel. See, e.g., United States v. Robert Egan, 10-cv-3121 (TPG), Dkt. No. 10 (S.D.N.Y. Apr. 29, 2010) ("Order Expanding the Scope of the Receiver's Authority and Authorizing the Receiver to Place Mount Vernon Money Center Corp. and Affiliates under Protection of Title 11 of the United States Code"); see also JY Creative Holdings, Inc. v. McHale, No. 8:14-CV-2899-JSM, 2015 WL 541692, at *2 (M.D. Fla. Feb. 10, 2015) ("Here, the receivership order authorized the Receiver to take all action on behalf of the Debtors, and it specifically enjoined the Debtors from interfering with the Receiver's duties. The district court subsequently issued an order explicitly authorizing the Receiver to file for bankruptcy on the Debtor's behalf."); Kelley v.

4

College of St. Benedict, 901 F. Supp. 2d 1123, 1125-26 (D. Minn. 2012) (noting that a receiver appointed pursuant to 18 U.S.C. § 1345 over a company accused of engaging in a Ponzi scheme was subsequently authorized to file a petition for bankruptcy and even later served as the trustee in bankruptcy); In Re Stratesec, Inc., 324 B.R. 156 (Bankr. D.D.C. 2004) ("A federal district court's order appointed Wedren as receiver and authorized him to file the bankruptcy petition on the debtor's behalf.").

The need to transition a receivership to bankruptcy may arise when there are competing claims that threaten to dismember the receivership estate. For example, in SEC v. Churchill Securities, Inc., 223 B.R. 415, 416 (S.D.N.Y. 1998), the district court noted that Judge Griesa had frozen the assets of a company and affiliated entities accused of securities violations and appointed a receiver. The receiver sought a modification of the receivership order after investors filed multiple suits in state court seeking to gain priority over other potential claimants. The district court modified the order to allow the receiver to place the companies in bankruptcy. Id. at 416-17. Similarly here, applications by the Former Executives, the Former Employees, and the Landlords demanding immediate payment of amounts allegedly owed to them would result in the piecemeal dismemberment of Narco Freedom while forfeiture

claims against Narco Freedom are still unresolved and while the state and federal governments are themselves contending that they are owed substantial amounts of money by Narco Freedom. Such dismemberment will be averted by an orderly bankruptcy where the interested parties and the state and federal governments can pursue their claims. For these reasons, the Temporary Receiver's motion for an order authorizing the Temporary Receiver to file a bankruptcy petition is granted.

**B.**

The specific applications by the Former Executives, the Former Employees, and the Landlords are denied without prejudice for the reasons detailed below.

**1.**

Alan Brand, Jason Brand, and Jonathan Brand each seek immediate payment of allegedly accrued vacation, personal, and sick time. They assert that the amounts are undisputed and that therefore they should be paid.  However, the applications are opposed by the Temporary Receiver, the Government, and the Attorney General's Office. There are plainly issues of fact as to whether the amounts sought are excessive compensation, whether payments to the Former Executives are a misuse of charitable assets, as the Attorney General's Office argues, and whether the funds available to Narco Freedom should not be used

because they are the proceeds of Medicaid fraud. Therefore, each
of their applications is denied without prejudice to being
raised in the bankruptcy proceeding.

**2.**

With regards to Gerald Bethea's application, the Temporary
Receiver agrees that Mr. Bethea should be paid $38,461.53 for
eight weeks of accrued vacation time which is presently reserved
in an escrow account. The Temporary Receiver initially portrayed
this payment as a settlement with Mr. Bethea. The Temporary
Receiver explained that she was satisfied that this payment was
not excessive compensation. However, Mr. Bethea made it clear
during the last conference that this payment was not a
settlement, and that he was actually seeking $92,829.64 in
accrued time, $6,000 for a bail bond, and $72,115.35 in
severance pay. Mr. Bethea's application is opposed by the
Government and the New York State Attorney General's Office in
all its aspects.

The Court could not resolve the issues raised by this
application—even with regards to the eight weeks of vacation pay
currently in escrow—without an evidentiary hearing. Simply
because the Temporary Receiver agreed that eight weeks of
vacation pay was not excessive compensation does not make it so.
Moreover, the vacation pay is only a small part of the total

amount sought by Mr. Bethea. And, as Mr. Bethea made clear, giving him eight weeks of vacation pay does not resolve all of his claims. The Court would still have to resolve the objections raised by the Government and the New York State Attorney General. Thus, there is no basis to treat Mr. Bethea differently from the other former executives.  Mr. Bethea's claims are denied without prejudice to being raised in the bankruptcy.

**3.**

It is plain that the application for additional compensation for the Former Employees could not be decided on the current papers. Counsel for the Former Employees acknowledges that more investigation may be necessary to determine whether the eight-week cap applied to accrued leave time. Dkt. No. 351. Given the need for further factual development and discovery, the Former Employees' claims cannot be decided now and should also be decided in bankruptcy. Thus, the Former Employees' application for payment is denied without prejudice to being raised in the bankruptcy proceeding.

In partial opposition to the motion to file a bankruptcy petition, the Former Employees took no position on the merits of the Temporary Receiver's motion for authority to file a bankruptcy petition. The Former Employees however sought certification of a class of former employees of Narco Freedom. In light of the foregoing factual issues, the request for class

certification and the request in the alternative to move for prepetition class certification are denied without prejudice to being raised in the bankruptcy proceeding.

**4.**

The Landlords seek somewhere between $800,000 and $1 million in building code violations and restoration costs. Dkt. No. 380. The Temporary Receiver does not concede that Narco Freedom is responsible for the alleged violations. Before deciding the Landlords' motion it would be necessary to adjudicate the facts disputed by the Landlords and the Temporary Receiver, something that could not be done on the present papers. The application to direct the Temporary Receiver to pay outstanding penalties is denied without prejudice to being raised in the bankruptcy proceeding.

**CONCLUSION**

For the foregoing reasons, the Temporary Receiver's motion is granted. The applications of the Former Executives, the Former Employees, and the Landlords are denied without prejudice. The parties may bring their applications in the bankruptcy court. The Clerk is directed to close Docket Nos. 305, 306, 307, 313, 335, and 350.

**SO ORDERED.**

**Dated:    New York, New York**
**December 18, 2015**

_____/s/_____
**John G. Koeltl**
**United States District Judge**